IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                             Plaintiff

v.                                No. 4:17-cr-267-DPM-1

ERIC SCOTT KINDLEY                                                  Defendant

## DEFENDANT'S RESPONSE TO GOVERNMENT'S
## 413/404(b) MOTION (Doc. 35)

Defendant has entered his not guilty plea to the charges involving two alleged victims in the indictment, and the case is proceeding to trial in March 2020. The government seeks to admit a lot of propensity evidence through F.R.E. 413 and 404(b). Rule 413(a) provides: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Rule 404(b) provides:

> (b) Crimes, Wrongs, or Other Acts.
>     (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>     (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Rule 413 thus is an exception to the prohibition on admission of character evidence (F.R.E. 404(a)) in sexual assault cases. *United States v. Mound,* 149 F.3d 799, 801–02 (8th Cir. 1998), *cert. denied,* 525 U.S. 1089 (1999)[1]; *United States v. Crawford,* 413 F.3d 873, 875–76 (8th Cir. 2005).

---

[1] *See also United States v. LeCompte,* 131 F.3d 767 (8th Cir. 1997) (same; F.R.E. 414 and child victim).

Defendant submits that, in the context of this case and as shown in the government's offer of proof in Doc. 35, admission of all this 413/404(b) propensity evidence, almost to the point of overkill, will deny defendant due process and a fair trial. Indeed, propensity evidence is in derogation of the common law. Therefore, the government's motion should be denied or, arguendo, severely limited.

## I. Propensity Evidence Violates Due Process at Common Law and Thus Due Process Now

Statutory F.R.E. 413 evidence has been around since 1995,[2] and the Eighth Circuit has held that 413 does not violate due process in substantial part because F.R.E. 403 probative value v. prejudice balancing is still required. *United States v. Mound,* 149 F.3d at 801. Other circuits are in accord, but still others just let 413 evidence in without regard to prejudice. Moreover, the Supreme Court has not yet ruled.[3]

---

[2] The history of the adoption of the Congressional legislation that is F.R.E. 413 is recounted in several 1995–97 law review articles arguing that the rule violates due process because it is contrary to foundational evidence questions that previously barred it. We just cite two: Louis M. Natali, Jr. & R. Stephen Stigall, *"Are You Going to Arraign His Whole Life?": How Sexual Propensity Evidence Violates the Due Process Clause,* 28 LOY. U. CHI. L.J. 1, 4–10 (1996); James Joseph Duane, *The New Federal Rules of Evidence on Prior Acts of Accused Sex Offenders: a Poorly Drafted Version of a Very Bad Idea,* 157 F.R.D. 95, 107–08 (1994) ("Indeed, the use of propensity evidence in this manner carries such an inherent risk of convicting the innocent that there is substantial authority to suggest that such use of character evidence against a criminal defendant would violate the Constitutional guarantees of Due Process and the presumption of innocence.").

[3] And we concede there is not yet a conflict in the circuits. State courts have come to varying results on this propensity evidence: *see, e.g., State v. Gresham,* 173 Wash. 2d 405, 269 P.3d 207 (2012) (a statute admitting this type of propensity evidence contrary to court adopted 404(b) evidence which is itself of common law origin violates separation of powers); *State v. Cox,* 781 N.W.2d 757 (Iowa 2010) (two or more sex offenses are not necessarily common scheme or plan evidence; inadmissible here); *State v. Ellison,* 239 S.W.3d 603, 606–07 (Mo. 2007) (propensity evidence results in a trial on a charge not made), *abrogated by constitutional amendment as stated in State v. Williams,* 548 S.W.3d 275, 280 (Mo. 2008) (and due process not violated). These three cases were cited by the appellant and are distinguished in *United States v. Shaffer,* 851 F.3d 166, 178 nn. 69–71 (2d Cir. 2017).

Therefore, Kindley makes three alternative due process arguments:

● First, 413's wholesale admission of propensity evidence in sexual assault cases violates the common law evidentiary prohibition against admission of propensity evidence because it diverts the jury's determination from the facts of this indictment off into the propensity evidence to more readily facilitate a conviction. An attempt at 403 balancing is a feeble attempt at due process and mere palliative care because the defendant was the loser in the 403 balancing in every case that is appealed. Moreover, 413's propensity evidence only needs to be proved by a preponderance of the evidence, not beyond a reasonable doubt as constitutionally required for the counts in the indictment.

● Second, alternatively, is a due process-as-applied challenge: that *this* proffer shows admitting *this* evidence in *this* case would deny due process and a fair trial because there is substantial risk, nay a near certainty, the jury would convict on the propensity evidence alone. That's why Congress made it admissible. *Compare* Doc. 35 at 51–52.

● Third, applying the principle of "constitutional avoidance" to keep the due process issue at bay, Kindley submits that 403 balancing should more sensitively favor Kindley than the wholesale admission of sexual propensity evidence than case law suggests.

Suppose, for example, the jury has a reasonable doubt as to the two alleged victims in the indictment. Will the inherent prejudice of the character and propensity evidence admitted via 413 cause the jury to convict anyway? Kindley submits yes, because propensity evidence is obviously designed, for good or ill, to facilitate convictions; thus due process is directly implicated. "We have a doubt as to the counts of this indictment. But we want to convict because the propensity evidence shows this is a bad man." Then, defendant is convicted, not on evidence of the crimes charged, but on character or propensity evidence found only by a preponderance of the evidence.

He would thus be convicted on a charge not made in the indictment. In such case, the propensity evidence has denied him due process and a fair trial.

## A.  The Bill of Rights Derives from the Common Law

James Madison is thought of as the father of the Bill of Rights, but even he agreed it come from many people and many sources. "This was not, like the fable Goddess of Wisdom, the offspring of a single brain. It ought to be regarded as the work of many heads and many hands."[4]

*I.e.,* hundreds of years of experience:  The drafters of the Bill of Rights were all seeking to incorporate the best parts of the common law for the new American experiment.

> In real life, the successful Constitution-maker must work upon an existing political and historical mold. Even a Madison could draft a Bill of Rights only because of the precedents furnished by centuries of Anglo-American constitutional development.
>
> If Madison and his colleagues could draw up the classic inventory of basic rights, it was because they were the heirs of the constitutional struggles waged by their English forbears. All too few people in this country realize the extent to which our modern liberties are based upon the crucial battles waged against seventeenth-century Stuart tyranny. ...
>
> The roots of American freedom are thus to be found in English constitutional history. To understand the history of the federal Bill of Rights, we must understand the development of constitutional guarantees of liberty which led up to the 1791 document. ... The constitutional amendments proposed by Madison were the logical culmination of what had gone before in both English and American constitutional history. ...

1 BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY at 3 (1971).[5]

"The interpretation of the Constitution of the United States is necessarily influenced by

---

[4] Madison's letter to William Cogswell, March 10, 1834, quoted in PETER MCNAMARA (ed.), THE NOBLEST MINDS: FAME, HONOR, AND THE AMERICAN FOUNDING 136 n. 3 (1999).

[5] *Van Ness v. Pacard,* 27 U.S. 137, 144 (1829):

> The common law of England is not to be taken in all respects to be that of America. Our ancestors brought with them its general principles, and claimed it as their birthright; but they brought with them and adopted only that portion which was applicable to their situation.

the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history." *Smith v. Alabama,* 124 U.S. 465, 478 (1888) (quoted in *United States v. Wong Kim Ark,* 169 U.S. 649, 655 (1898)). *Accord: Ex parte Grossman,* 267 U.S. 87, 108–09 (1925) ("The language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted. The statesmen and lawyers of the Convention who submitted it to the ratification of the Convention of the Thirteen States, were born and brought up in the atmosphere of the common law, and thought and spoke in its vocabulary."). *See* 6 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE §§ 23.8–23.9 (5th ed. 2013).

Accordingly, nearly all of the Bill of Rights is premised on the common law. Not to belabor the point and get off track, we provide just a few examples:

Second Amendment: *District of Columbia v. Heller,* 554 U.S. 570, 584 n.7 (2008), found common law origin for the Second Amendment.

Fourth Amendment: The common law defines reasonableness under the Fourth Amendment. *Wilson v. Arkansas,* 514 U.S. 927, 930–34 (1995), there specifically the right to announcement before entry which was at least 720 years old by a 1275 statute and then 1603's *Semayne's Case,* 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K. B. 1603).

Fifth Amendment due process: *see, e.g., Brinegar v. United States,* 338 U.S. 160 (1949) (conviction must be based on admissible evidence under rules developed at common law[6]); *In re*

---

[6] *Id.* at 174:

Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence

*Winship,* 397 U.S. 358 (1970) (proof beyond a reasonable doubt is required by due process of law); *Johnson v. United States,* 135 S.Ct. 2551 (2015) (vagueness is a due process issue).[7]

Sixth Amendment: *see, e.g., Pointer v. Texas,* 380 U.S. 400, 405 (1965) (confrontation is fundamental right in the right to a fair trial); *Crawford v. Washington,* 541 U.S. 36, 55–56 (2004) (interpreting the Confrontation Clause in accord with the common law admissibility of hearsay); *Gideon v. Wainwright,* 372 U.S. 335 (1963) (indigent's right to counsel).

Seventh Amendment: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

Fourteenth Amendment due process, § 1 ("nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); *Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868 (2009) (due

---

consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

[7] *Id.* at 2573:

Although *Murray's Lessee* stated the contrary, 18 How., at 276, 59 U.S. 272, 15 L. Ed. 372, a number of scholars and jurists have concluded that "considerable historical evidence supports the position that 'due process of law' was a separation-of-powers concept designed as a safeguard against unlicensed executive action, forbidding only deprivations not authorized by legislation or common law." D. Currie, The Constitution in the Supreme Court: The First Hundred Years 1789-1888, p. 272 (1985); *see also, e.g., In re Winship,* 397 U.S. 358, 378-382, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (Black, J., dissenting). Others have disagreed. See, e.g., Chapman & McConnell, Due Process as Separation of Powers, 121 Yale L. J. 1672, 1679 (2012) (arguing that, as originally understood, "the principle of due process" required, among other things, that "statutes that purported to empower the other branches to deprive persons of rights without adequate procedural guarantees [be] subject to judicial review").

process right to a fair appellate tribunal); *Williams v. Pennsylvania,* 136 S.Ct. 1899 (2016)

(same).

## B.  The Law of Evidence All Derives from the Common Law

Thus, we see that admissibility of evidence started with and has always been a common

law question. Lawyers have been trying cases for hundreds of years,[8] and only since the mid-

1970's did we have cogent codified rules, and those rules were based on those hundreds of years

experience. The Federal Rules of Evidence weren't codified until 1975.[9] So, prior to 1975 in

federal court and 1976 in Arkansas state court, criminal trial evidence questions were based on

well-established common law rules derived from hundreds of years of practical experience. 1

WIGMORE ON EVIDENCE § 4 (Tillers rev. 1983).[10] Apparently the first treatise on evidence didn't

even appear until about 1726 or 1754.[11]

Even today, the scope of privilege in the federal courts is determined by the common law.

F.R.E. 501:

> The common law — as interpreted by United States courts in the light of
> reason and experience — governs a claim of privilege unless any of the following
> provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.

---

[8] WILLIAM FORSYTH, HISTORY OF TRIAL BY JURY (1852).

[9] An Act to Establish Rules of Evidence for Certain Courts and Proceedings, Pub.L. 93–595, 88 Stat. 1926.

[10] Remember that the full title of the current Wigmore before shortening was JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW. The first edition was TREATISE ON THE ANGLO-AMERICAN SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW (1904).

[11] *Id.* at 27, citing GEOFFREY GILBERT, LAW OF EVIDENCE (1726, published posthumously 1754), according to C.J.W. ALLEN, THE LAW OF EVIDENCE IN VICTORIAN ENGLAND 2 (1997).

*See* 1 MCCORMICK ON EVIDENCE § 76.1 (7th ed. June 2016 update).[12]

### C.  Restrictions on Other Crimes Evidence Came From the Common Law

A.R.E. 404(b) was but an adoption of the common law rule in Arkansas. *Price v. State,* 267 Ark. 1172, 1175, 599 S.W.2d 394, 396 (App. 1980). *See Alford v. State,* 223 Ark. 330, 333–34, 266 S.W.2d 804, 806 (1954):

> The rule itself has been announced in some fifty decisions of this court and is so familiar that we need not discuss at length the reasons for its acceptance by every English and American court. Basically, the rule rests upon that spirit of fair play which, perhaps more than anything else, distinguishes Anglo-American law from the jurisprudence of other nations. Our theory is simply that a finding of guilty should rest upon proof, beyond a reasonable doubt, that the accused committed the exact offense for which he is being tried.

### D.  The Rule Against Propensity Evidence is a Common Law Rule

The inadmissibility of propensity evidence is a common law rule. 1 MCCORMICK ON EVIDENCE § 186 (7th ed. 2016 update):

> Furthermore, jurors may regard personality traits as more predictive of individual behavior than they actually are.[8] Exclusion is therefore much more likely when the character evidence is offered solely to help prove that a person acted in one way or another. Thus, Federal Rule of Evidence 404(a), which basically codifies common law doctrine, provides that subject to enumerated exceptions, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." (footnotes omitted)

McCormick's footnote 8 cites several authorities which are not copied here except one which is cited in the margin.[13]  1A WIGMORE ON EVIDENCE § 58.2, at 1212–15 (Tillers rev. 1983) originally predates McCormick and quotes numerous old cases on the prejudicial overvaluation of

---

[12] Arkansas, for what it's worth, long ago mentioned admission and exclusion of evidence was determined by common law. *Magness v. Walker,* 26 Ark. 470, 474–75 (1871).

[13] Edward Imwinkelried, *Reshaping the "Grotesque" Doctrine of Character Evidence: The Reform Implications of the Most Recent Psychological Research,* 36 SW. U. L. REV. 741 (2008).

propensity evidence by juries.

Natali & Stigall, 28 Loy. U. Chi. L.J. at 10–23, offer a compelling due process argument citing Supreme Court cases in general in Part III and then Part IV as to 413. They note that the common law defines due process:

> The Supreme Court elaborated on this historical test in *Hurtado v. California.* In *Hurtado,* the Court explained that a process, not otherwise forbidden, "must be taken to be due process of law, if it can show the sanction of settled usage both in England and in this country; ...." The Supreme Court recently re-articulated the definition of due process in *Dowling v. United States.* The Court defined due process as "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define the community's sense of fair play and decency." (footnotes omitted)[14]

A different phrase from *Dowling v. United States,* 493 U.S. at 353, was quoted by the Eighth Circuit in *Mound* at 801:

> To determine whether the rule [413] fails "the due process test of fundamental fairness," we consider whether "the introduction of this type of evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (citation omitted). (bracketed material added)

### E.  413 Creates a De Facto Evidentiary Presumption of Guilt

Shifting the burden of proof on an element of the crime in a criminal case violates due process. *Mullaney v. Wilbur,* 421 U.S. 684, 702 (1975). Kindley submits that propensity evidence is designed, even intended, to shift the burden. *See, e.g., Francis v. Franklin,* 471 U.S. 307, 333 (1985):

> The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every

---

[14] The omitted citations are: Notes 81–82, *Hurtado v. California,* 110 U.S. 516, 528 (1884); notes 83–84, *Dowling v. United States,* 493 U.S. 342, 353 (1990) (quoting *Mooney v. Holohan,* 294 U.S. 103, 112 (1935)).

fact necessary to constitute the crime with which he is charged." *In re Winship*[, 397 U.S. 358, 364 (1970)]. This "bedrock, 'axiomatic and elementary' [constitutional] principle," *id.,* at 363, prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Sandstrom v. Montana, supra* [442 U.S.], at 520-524; *Patterson v. New York,* 432 U.S. 197, 210, 215 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 698-701 (1975); see also *Morissette v. United States,* 342 U.S. 246, 274-275 (1952). The prohibition protects the "fundamental value determination of our society," given voice in Justice Harlan's concurrence in *Winship,* that "it is far worse to convict an innocent man than to let a guilty man go free." 397 U.S., at 372. See *Speiser v. Randall,* 357 U.S. 513, 525-526 (1958). (bracketed material added)

### III.   The Right to A Fair Trial,
### "The Most Fundamental of All Freedoms."

So basic to our jurisprudence is the right to a fair trial that it has been called "the most fundamental of all freedoms." *Estes v. Texas,* 381 U.S. 532, 540 (1965). It is a right essential to the preservation and enjoyment of all other rights, providing a necessary means of safeguarding personal liberties against government oppression. *See, e.g., Rideau v. Louisiana, supra,* at 726–727. *See generally Duncan v. Louisiana,* supra, at 149–158.

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 586 (1976).

### A.   Introduction

The government's proffered 413/404(b) evidence in Doc. 35 would deny defendant a fair

trial in violation of the due process clause of the Fifth Amendment as implemented in part

through the Sixth Amendment.

### B.   Due Process

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment."

*Estelle v. Williams,* 425 U.S. 501, 503 (1976) (citing *Drope v. Missouri,* 420 U.S. 162, 172

(1975)).

[T]he Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington, supra,* at 684; *Nix v. Whiteside,* 475 U.S. 157, 175 (1986) (noting that under *Strickland,* the "benchmark" of the right to counsel is the "fairness of the adversary proceeding') ....

*Lockhart v. Fretwell,* 506 U.S. 364, 368 (1993)

Until recently (*see* C, just below), the right to a fair trial we were always told was with the

Fifth Amendment's due process clause. Earliest cases wrote of the bias of the jury[15] or judge[16] but

became apparently by 1961 with *Mapp*[17] and the exclusionary rule, then the gathering of

evidence[18] or the ability to obtain exculpatory evidence[19] and the right to defense evidence.[20]

Some general statements of due process and the right to a fair trial could be gleaned from them.

*See, e.g., Lisenba v. California,* 314 U.S. 219, 236 (1941).

> As applied to a criminal trial, denial of due process is the failure to observe that
> fundamental fairness essential to the very concept of justice. In order to declare a
> denial of it we must find that the absence of that fairness fatally infected the trial;
> the acts complained of must be of such quality as necessarily prevents a fair trial.

In *Powers v. Ohio,* 499 U.S. 400, 413 (1991), the Court held "The purpose of the jury system is

to impress upon the criminal defendant and the community as a whole that a verdict of convic-

tion or acquittal is given in accordance with the law by persons who are fair."

---

[15] *In re Oliver,* 333 U.S. 257 (1948); *Tumey v. Ohio,* 273 U.S. 510 (1927); *Batson v. Kentucky,* 476 U.S. 79, 86 n.8 (1986).

[16] More recently was the infamous *Caperton v. A.T. Massey Coal Co., Inc.,* where the plaintiff challenged the composition of an appellant tribunal for an appellate judge's campaign contributions in obscene amounts. "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" 556 U.S. at 876, *quoting In re Murchison,* 349 U.S. 133, 136 (1955).

[17] *Mapp v. Ohio,* 367 U.S. 643 (1961).

[18] *See, e.g., Crane v. Kentucky,* 476 U.S. 683 (1986) (truthfulness and voluntariness of a confession remains a jury question); *Sims v. Georgia,* 385 U.S. 538 (1967) (trial court's failure to determine voluntariness required reversal); *Payne v. Arkansas,* 356 U.S. 560, 568 (1958) (admission of a coerced confession violates due process).

[19] *See, e.g., Brady v. Maryland,* 373 U.S. 83 (1963); *United States v. Agurs,* 427 U.S. 97 (1976).

[20] *Ake v. Oklahoma,* 470 U.S. 68 (1985) (witnesses on defendant's mental condition).

In time, the requirement of proof beyond a reasonable doubt to convict was recognized as a due process right.[21] *In re Winship,* 397 U.S. 358, 361–65 (1970) (although recognizing it was seemingly assumed in several cases since at least *Miles v. United States,* 103 U.S. 304, 312 (1881), and *Coffin v. United States,* 156 U.S. 432, 454–55 (1895)[22]); *Mullaney v. Wilbur,* 421 U.S. 684, 702 (1975) (shifting burdens violates due process); *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (where the court noted even properly instructed juries make mistakes and convict on insufficient evidence). *Jackson* also noted, at 314:

> It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. *Cole v. Arkansas,* 333 U.S. 196, 201; *Presnell v. Georgia,* 439 U.S. 14. These standards no more than reflect a broader premise that has never been doubted in our constitutional system: that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend. *E.g., Hovey v. Elliott,* 167 U.S. 409, 416–420. *Cf. Boddie v. Connecticut,* 401 U.S. 371, 377–379.

This, we will see, is relevant here, because 413 evidence is essentially, and at bottom, "conviction upon a charge not made," and a conviction on a charge not made is a violation of due process. *De Jonge v. Oregon,* 299 U.S. 353, 362 (1937); *Cole v. Arkansas,* 333 U.S. at 201; *Presnell v. Georgia,* 439 U.S. 14, 16 (1978).

### C. Defined Largely and Implicit Through the Sixth Amendment

Due process is where the right to a fair trial started, but it was recognized 35 years ago that the right to a fair trial is "define[d] ... largely through the several provisions of the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 685 (1984):

---

[21] It was a common law right apparently dating from the Middle Ages and Pope Gregory the Great. JAMES Q. WHITMAN, THE ORIGINS OF REASONABLE DOUBT 202 (2008).

[22] *Id.* at 454: "Greenleaf traces this presumption [of innocence] to Deuteronomy, and quotes Mascardius Do Probationibus to show that it was substantially embodied in the laws of Sparta and Athens." (bracketed material added)

> Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled.

In 2012, the Court stated that the right to a fair trial is implicit within the Sixth Amendment, too, in *Perry v. New Hampshire,* 565 U.S. 228, 231–32 (2012) ("In our system of justice, fair trial for persons charged with criminal offenses is secured by the Sixth Amendment, which guarantees to defendants the right to counsel, compulsory process to obtain defense witnesses, and the opportunity to cross-examine witnesses for the prosecution."). *See Arizona v. Youngblood,* 488 U.S. 51, 61 (1988) (Blackmun dissenting with Brennan and Marshall) ("The Constitution requires that criminal defendants be provided with a fair trial, not merely a 'good faith' try at a fair trial.").

### D.  Right to Put on a Meaningful Defense; "A Pro Forma Opportunity Will Not Do"

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). More pointedly, the Court held in *Gray v. Netherland,* 518 U.S. 152, 181–82 (1996):

> As this Court affirmed more than a century ago: "Common justice requires that no man shall be condemned in his person or property without ... an opportunity to make his defence." *Baldwin v. Hale,* 1 Wall. 223, 233 (1864). *See also Windsor v. McVeigh,* 93 U.S. 274, 277 (1876). A pro forma opportunity will not do. Due process demands an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965); *see In re Oliver,* 333 U.S. 257, 275 (1948) (defendant must be afforded "a reasonable opportunity to meet [the charges against him] by way of defense or explanation"); *Morgan v. United States,* 304 U.S. 1, 18 (1938) ("The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them."). Absent a full, fair, potentially effective opportunity to defend against the State's charges, the right to a hearing would be "but a barren one." *Ibid.; see Mullane v. Central Hanover Bank & Trust Co.,* 339

U.S. 306, 315 (1950) ("process which is a mere gesture is not due process").
(bracketed material in original)

### E.  Propensity Evidence Denies Due Process

Propensity to commit criminal acts may not be used as proof that the defendant committed the particular criminal act charged. *Old Chief v. United States,* 519 U.S. 172, 180–82 (1997) (it is improper to "generaliz[e] a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged"). Our "whole tradition is that a man can be punished by criminal sanctions only for specific acts," and "not for general misconduct." *Michelson v. United States,* 335 U.S. 469, 489 (1948) (we cannot send a person to prison for being "generally a bad man"). Evidence of general bad character or prior bad acts "weigh[s] too much with the jury and [risks] overpersuad[ing] them as to prejudge one with a bad general record and deny [the defendant] a fair opportunity to defend against a particular charge." *Old Chief,* 519 U.S. at 180–82. *See also Dowling* at 352 (due process asks whether introduction of this type of evidence is "so extremely unfair that its admission violates 'fundamental conceptions of justice'"); *Spencer v. Texas,* 385 U.S. 554, 574 (1967) (Warren, C J. concurring in part and dissenting in part with three others) (noting that case law "suggest[s] that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause").

The government's response readily comes to mind: These are not mere "generalized bad acts"—these are specific acts of propensity quite similar in kind and nature to what's charged in the indictment. Its argument is that their substantial similarity is what makes them admissible as propensity evidence. Their substantial similarity is also what makes them so grossly prejudicial to Kindley's due process right to a fair trial. They are, in the words of *Dowling,* "so extremely

unfair that its admission violates 'fundamental conceptions of justice.'"

### F.  The 413 Limiting Instruction (2.08A) Underscores
### the Due Process Issue and Also Violates Due Process

The Eighth Circuit's Model Criminal Jury Instruction 2.08A[23] is the 413 limiting instruction. And, its preponderance burden of proof for the 413 propensity evidence to assist in proving the defendant guilty beyond a reasonable doubt on the crimes charged in the indictment violates due process by lessening the government's burden as a whole. Indeed, Kindley submits it is fairly impossible for a jury to not consider something as prejudicial as the proffered 413 evidence in weighing guilt beyond a reasonable doubt on the indictment when the evidence to bolster the indictment doesn't have to be proved beyond a reasonable doubt at all.

Model Instruction 2.08A:

> You [are about to hear] [have heard] evidence that the defendant may have previously committed [another] [other] offense[s] of [sexual assault] [child moles-tation]. The defendant is not charged with [this] [these] other offense[s]. You may consider this evidence only if you unanimously find it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt. If you find that [this offense has] [these offenses have] not been proved, you must disregard [it] [them].
>
> If you find that [this offense has] [these offenses have] been proved, you may consider [it] [them] to help you decide any matter to which [it is] [they are] relevant. You should give [it] [them] the weight and value you believe [it is] [they are] entitled to receive. You may consider the evidence of such other act[s] of [sexual assault] [child molestation] for its tendency, if any, to show the defendant's propensity to engage in [sexual assault] [child molestation] [.] [, as well as its tendency, if any, to [determine whether the defendant committed the acts charged in the Indictment] [determine the defendant's intent] [determine the identity of the person who committed the act[s] charged in the Indictment] [determine the defendant's (motive) (plan) (design) (opportunity) to commit the act[s] charged in the Indictment] [determine the defendant's knowledge] [rebut the contention of the defendant that [his] [her] participation in the offense[s] charged in the Indictment was the result of (accident) (mistake) (entrapment)] [rebut the

---

[23] http://www.juryinstructions.ca8.uscourts.gov/Criminal-Jury-Instructions-2017.pdf at 41–42. There is a separate 404(b) limiting instruction in 2.08. It has the same defect.

issue of ———— raised by the defense].]

     Remember, the defendant is on trial only for the crime[s] charged. You may not convict a person simply because you believe [he] [she] may have committed similar acts in the past.

Which thus raises another point: Kindley submits that 2.08A violates due process. The propensity evidence must be proved beyond a reasonable doubt, too, because anything that countenances a conviction on less than proof beyond a reasonable doubt as to the whole case violates due process of law.

The 413 evidence here is grossly prejudicial. To permit it to aid a conviction when the burden on propensity evidence is only by a preponderance violates the fundamental requirement of due process that the elements be proved beyond a reasonable doubt. The due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship,* at 364. The propensity evidence must be "necessary" to the government because that's why it is offered by them.

### III.   The Government's Proffer

Doc. 31 is the January 8, 2019, superseding indictment, and it alleges two victims:

     **Count 1:** February 15-16, 2014, forced oral sex on A.M.

     **Count 2:** January 28, 2019, forced digital penetration of E.S.

     **Count 3:** Possession of a firearm during Count 2.

In the 413 part of the 413/404(b) motion, the government proposes to admit propensity evidence from S.H. (from the California indictment), K.G., J.M., M.P. (from the California indictment), J.S., K.K.1, and K.K.2. The government's summary is Doc. 35 pp. 12–30.

In the 404(b) part of the motion, the government proposes to admit other crimes evidence from C.B.1, C.B.2, A.K., K.A., M.M., D.C., M.L., and T.W. The government's summary is Doc.

35 pp. 30–47.

The table summary of all the alleged victims appears id. at 63–67.

## A.  F.R.E. 403 Requirements

The court is well familiar with the 403 requirements: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

As already stated, Kindley submits that F.R.E. 403 balancing of probative value v. prejudice is required under 413. Without 403 balancing, the due process issue already addressed is underscored, bold faced, italicized, and in 24 point type.

On can easily envision our trial: The government spends maybe two days putting on A.M. and E.S. to testify to what they allegedly experienced along with all the individual corroboration of their testimony from records. Then the government spends the next 15 days putting on 413 and 404(b) evidence to shore up A.M. and E.S.'s testimony. We've always heard about avoiding "side trials" or "mini trials"[24] with 403 evidence, but this proffer makes it apparent that the 413/404(b) evidence really is *the* trial. A.M. and E.S. are the vehicle to get all the others into evidence.

## B.  403 Factors

One reads that motion and has one reaction: If the government gets to prove all that, the trial is a mere formality and a conviction is a foregone conclusion. That is why it is so inherently prejudicial. Suppose the jury has a reasonable doubt on A.M. and E.S. After the propensity

---

[24] *United States v. Mohamed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (court desires to avoid mini trials within the trial).

evidence they wouldn't have a doubt. And that's precisely why 413 was passed—to make it harder for persons accused of sex crimes to be acquitted, and that's the due process issue. Let's consider the 403 factors seriatim:

**Unfair prejudice:** Unfair prejudice in 403 is suggesting a verdict on an improper basis, and here that would be wholesale crediting the propensity evidence, providing for an emotional basis for the verdict that defendant is just a really bad guy, and ignoring the evidence of A.M. and E.S. to convict based solely on what else the jury heard. *See United States v. Driver,* 945 F.2d 1410, 1416 (8th Cir. 1991).

**Confusing the issues:** Confusion appears to be a substantial risk. The jury will long forget about A.M. and E.S. after hearing from all these alleged victims, too. There are disparate specific allegations, but they all but K.K.2 land in the same ballpark. Not in the infield; just in the ballpark and maybe even in the bleachers.

**Misleading the jury:** 413 says that "The evidence may be considered on any matter to which it is relevant." It is propensity evidence, pure and simple. It is offered to bolster the government's case and make it impossible to defend.

**Undue delay:** The potential of three or four additional weeks of testimony would make this Arkansas's longest rape trial. Even Tony Alamo's criminal case in the Western District with ten Mann Act counts involving minors apparently had no 404(b) evidence; at least none is mentioned in the appeal. That trial lasted ten days. *United States v. Hoffman,* 2009 U.S. Dist. LEXIS 91223 (W.D. Ark. Sept. 10, 2009), *aff'd*, 626 F.3d 993 (8th Cir. 2010).

**Wasting time:** As stated above, the 413/404(b) may end up taking 15–20 days to put on. There will be "side trials" for each propensity witness the jury will have to hear and decipher, and that also means defense investigation and cross-examination of every witness. No jury, no

judge, no lawyer, should be put through that kind of unnecessary testimony. Defense counsel has endured that one, and that was enough.[25]

**Needlessly presenting cumulative evidence:** Granted, each of the propensity witnesses in 413/404(b) allegedly has her own story, and they will apparently start to sound repetitive. The government will say that is because defendant's pattern with each woman was the same, which is what the offer of proof shows. So, this one does not favor either side.

**Usefulness of limiting instruction:** As already discussed in Part II(F), Eighth Circuit Model Instruction 2.08A on 413 and 2.08 on 404(b) evidence are constitutionally defective because they permit finding the propensity evidence all relevant by a mere preponderance of evidence.[26] Moreover, the limiting instructions will fall on deaf ears because it's assuming the impossible. It's not just telling the jury to carefully weigh the propensity evidence—the rule and instruction say propensity comes in essentially for what it's worth, which can only be to bolster A.M. and E.S. Compared to all the government proposes to put into evidence, the limiting instruction will be unheard and unheeded because we are presuming (actually hoping against hope) that the jury will carefully weigh the most damning evidence the government can offer. It will be an impossible task. *See Virgin Islands v. Pinney,* 967 F.2d 912, 918 (3d Cir. 1992) (limiting instruction would not prevent the jury from considering the evidence for improper purpose).

**Remoteness:** Remoteness is a 404(b) issue under Arkansas law but doesn't seem as

---

[25] In 2007, defense counsel participated in a three-month state CCE case in Lonoke County that had over two weeks of testimony on a side issue before the jury that the trial judge finally just ruled was never admissible to begin with and told the jury to disregard it. The appeal was *Campbell v. State,* 2009 Ark. 540, 354 S.W.3d 41 (2009) (where it was reversed for error in the admission of other evidence).

[26] It also shifts the relevance determination from the court under F.R.E. 103 to the jury.

critical under the Federal Rules of Evidence. Yet, it should still be a consideration because it's based on fairness and attempting to reach a fair and just result.[27]

Here, all the propensity evidence but one is from 2012–2017. The outlier is the alleged rape of defendant's third wife, K.K.2 in 2005 or 2006. The fact the government is offering this one as well shows the intended breadth of 413/404(b) evidence in sex assault cases: 413 promotes putting everything into evidence involving an alleged sex offense. K.K.2's alleged rape, however, is remote, completely dissimilar in its allegation, and suggests a cross-examination based on the bias of a former wife of a criminal charge never brought. Therefore, it strains the limits of relevance, if relevance has any value at all under 413.

## C. Categorizing the 413/404(b) Evidence For Differences

If we categorize the 413/404(b) evidence, differences appear. Some of the women alleged sexual penetration or attempted penetration, some only groping, and some alleged only inappropriate sexual talk and watching them urinate.

**Inappropriate sexual talk:** T.W., M.M., C.B.2, D.C., K.A., M.L.

**Inappropriate talk, watched them urinate:** C.B.1, A.K.

**Sexual penetration:** SH (California indictment), J.S., MP (also California indictment and watched her urinate), K.G. (oral sex), K.K.2 (wife rape), *see* K.K.1 below

**Groped, watched her urinate:** J.M., K.K.1 (also attempted sex).

## C. 413/404(b) Factors

413 applies to sexual assaults, and 404(b) to other bad acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Oppor-

---

[27] F.R.E. 102: "These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."

tunity and identity are not an issue. Absence of mistake or lack of accident are not, either. Thus, we are left with motive, intent, preparation, plan, and knowledge.

The inappropriate sexual talk and watching them urinate are not "sexual assaults" under 413. Therefore, the court should look instead to 404(b), and then they become more prejudicial than relevant. Talk doesn't rise to the level of action. Talk is not coerced sex of a woman in custody. The government will argue that it is still probative of proving defendant's intent to attempt to have sex. Still, the inappropriate sexual talk and watching them urinate, the latter[28] something that happens in jail even by jailers of the opposite sex, is not action and not forced sex. *Timm v. Gunter,* 917 F.2d 1093 (8th Cir. 1990) (cross-gender pat-searches in prison not unreasonable or violation of inmates' rights); *Williams v. Bradley,* 2008 WL 2954247 (E.D. Ark. July 29, 2008) (cross-gender strip searches permissible).

The claims of sexual assault and groping are conceivably, without waiving the due process objection already made, more likely admissible under 413/404(b): *i.e.,* SH (California indictment), J.S., J.M. MP (also California indictment), K.K.1 (attempted sex), K.G. and K.K.2 (wife rape). Still, the prejudice is palpable.

Lastly, K.K.2, Kindley's third wife who claims a rape 15 years before the trial back in 2005–06, is far more prejudicial than relevant. She was not a handcuffed prisoner in his custody as an extradition transporter. She shouldn't even come close to being a witness under the more flexible standard of 404(b). But its disparity to the remainder should rule it out as 413 evidence, too. It becomes relevant of nothing that he allegedly raped his wife 15 years ago when she never complained to anybody.

---

[28] And likely even the former.

**CONCLUSION**

The government's motion first should be denied because the breadth of 413/404(b)

evidence as the rules as applied to this proffer denies a fair trial and due process of law. Alterna-

tively, the government should only be able to get in (over our running objection) the evidence of

actual or attempted sexual assault or groping of extradition prisoners. K.K.2 should be barred

entirely under 403 for lack of relevance and palpable prejudice.

Respectfully submitted,

JOHN WESLEY HALL
  Ark. Bar No. 73047
1202 Main Street; Suite 210
Little Rock, Arkansas 72202-5057
(501) 371-9131 / fax (501) 378-0888
e-mail:  ForHall@aol.com
  *Attorney for Defendant*